Dickman, J.
The record discloses as facts established to the satisfaction of the courts below, and which we are not disposed to call in question, that the defendant in error, on the 9th day of August, 1882, deposited with the Citizens’ National Bank of Cincinnati, the sum of eleven hundred and forty-five dollar’s, and received from the bank a certificate of deposit for that amount, signed by the proper officer of the bank, bearing date as of that day, and made payable to the order of the depositor in current funds, on the return of the certificate. On the 16th day of September, 1882, the defendant in error lost the certificate of deposit, and has not *42 since found or recovered it. When lost, the certificate was not indorsed by the defendant in error; and on the 18th day of September, 1882, he demanded payment thereof from the bank, but the bank refused to pay the same unless he would first indemnify it by bond, with good and sufficient sureties against any loss which it might suffer by reason of the certificate being held or owned by some person other than himself, who would seek to enforce against the bank the collection thereof.
The certificate was in effect a promissory note. It possessed all the requisites of a negotiable promissory note, and as such was governed by the rules and principles apj)licable to that class of paper. In Howe v. Hartness, 11 Ohio St. 449, it was held that a certificate of deposit substantially the same as that under consideration, was a negotiable promissory note. And in Miller v. Austen, 13 How. (U. S.) 218, where the amount deposited with the bank was payable only to the order of the depositor, at a future day certain, upon the return of the certificate of deposit, it was recognized as the established doctrine, that a promise to deliver or to be accountable for so much money is á good bill or note; that the sum named in the certificate issued being certain and the promise direct, every reason existed why the indorser of the paper should be held responsible to his indorsee, that could prevail in cases where the paper indorsed is in the ordinary form of a promissory note; and that as such note, the state courts generally had treated certificates of deposit payable to order: The fact that the money deposited with the plaintiff in error was made payable on return of the certificate, was not such a contingency as affected the negotiable character of the instrument. Hunt v. Divine, 37 Ill. 137; Smilie v. Stevens, 39 Vt. 315; Bellows Falls Bank v. Rutland County Bank, 40 Vt. 377.
In the view which we take of the case before us, it becomes unnecessary to inquire whether the certificate was overdue and payable at the time of its loss, or whether a demand before the loss of the certificate was an essential pre-requisite to the maturity of the instrument, in order to determine whether one who should come into possession of it, would be subject to the *43 equities that might exist between the bank and the depositor, whereby the bank would be secure in paying the amount of the certificate to the depositor, without exacting from him an indemnity. The certificate though negotiable was not negotiated when lost by the payee. It was never indorsed by him, and it becomes a subject of inquiry whether, in such, case, a bond of indemnity to the bank was á condition precedent to his right of recovery at law on the lost instrument.
It was said by Lord Ellenborough in Pierson v. Hutchinson, 2 Campb. 211, “ whether an indemnity be sufficient or insufficient, is a question of which a court of law cannot judge ”; and by Lord Elden, in Ex parte Greenway, 6 Ves. Jr. 812, “ I never could understand by what authority courts of law compelled parties to take the indemnity.” But the difficulty which courts of law have found in adjusting indemnities is obviated in this state under our code of civil procedure, which settles in the same action the legal and equitable rights of the parties, — altering .rather the form of administering justice than impairing in any manner the rights of the parties, whether before denominated legal or equitable. Lamson v. Pfaff, 1 Handy, 449.
If a negotiable note payable to bearer, or to order, and indorsed in blank, is lost before maturity, it is right that the maker, upon paying its contents, should be made secure against being compelled to pay the same a second time. But when the lost instrument is not payable to bearer, or is payable to order and is unindorsed by the.payee, as no legal title in such a case could pass, so as to invest any one with the privileges of a bona fide holder in the usual course of trade, no indemnity would be necessary. If one should find a note negotiable by indorsement, and forge the indorsement, the holder by this title could make no valid claim against any one, because the written transfer would confer no title upon him. And if the finder should not forge the endorsement, his action or demand of payment must needs be in the payee’s name, and the maker might then plead any judgment already rendered against him on the note in favor of the payee, or any payment thereon made by him to the payee.
*44 Among the exceptions as to indemnity, it is said by an approved text-writer, that there are some cases in which the defendant can run no risk, and in which the plaintiff may, therefore, proceed in a court of equity or law without giving a bond of indemnity; that is, where the note is not negotiable; and where, though negotiable, it is payable to order and unindorsed, or has been specially indorsed. Daniel on Negotiable Instruments, § 1481.
The reason which permits notes never negotiable to be sued under the expeditious forms of the common law, in preference to the more tedious and expensive ones of chancery, applies, says Parsons, in his treatise on Notes and Bills, equally well to all notes which, being negotiable, have not been negotiated. The rule as laid down by Greenleaf (Evid., vol. 2, § 156) is, that if the bill or other negotiable security be lost, there can be no remedy upon it by law, unless it was in such a state when lost, that no person but the plaintiff could have acquired a right to sue thereon. But, if there is no danger that the defendant will ever again be liable on the bill or note, as, if the indorsement were specially restricted to the plaintiff only, or if the instrument was not indorsed, the plaintiff has been permitted to recover upon the usual secondary evidence. And Judge Story, in considering the remedy afforded in equity, and approving the rule allowing a recovery on a lost note at law where it is not negotiable, states that the same rule will apply if the note were originally negotiable,where it has not been indorsed by the payee. Promissory Notes, § 451.
In accord with the rule holding the maker liable without indemnity, where the payee has lost a negotiable note before indorsing it, is the decision in Thayer v. King, 15 Ohio, 242. That decision was rendered in the year 1846, and it has stood approved in this state from the day of its announcement. "We find no adequate ground for now disturbing it. The court held, in that case, that an action might be maintained at law on a note payable to order, and indorsed in blank, and lost after it became due. The reason for so holding will apply with equal force to the case under consideration. In the one *45 case, it was deemed unnecessary to invoke the chancery powers of the court for an indemnity, as the maker wuuld be protected against a double payment of the overdue lost notes, by reason of their being charged with all equities existing between himself and the owner of the paper. . And in the case at bar, no bond of idemnity was neccessary, — the bank being protected against a second payment of the certificate of deposit by reason of its not having been indorsed before it was lost, whereby no bona fide holder could invalidate the equities between Brown and the bank. In referring to the contingency of a double recovery against a maker who has been compelled to pay lost negotiable paper, which had fallen into the hands of an innocent holder, who had received it before due, Read, J., in Thayer v. King, supra, says: “ If former payment or recovery would be a complete bar to any subsequent payment or recovery, the reason of the rule ceases, and the objection to a recovery by the owner no longer exists. Hence, if the circumstances of the case are such that the negotiable paper can never be produced for payment a second time, or if produced would permit no right of recovery in the hands of the holder, no indemnity in such case being required to guard against a second payment, recovery may be had in a court of law. Thus, if the instrument be totally destroyed, or if it pass into the hands of the holder, charged with all the equities which exist against the original holder, the action may be at law.”
Our attention has been called to leading authorities in different states, in confirmation of the aforegoing views — all going to establish the doctrine that an action at law may be sustained — without tendering an indemnity — on the lost note though it be negotiable, if it'appear not to have been negotiated, upon giving the usual proof necessaiy to let in parol evidence of a written contract.
In New York, before the enactment of provisions securing the action at law upon lost negotiable paper, upon tendering a bond of indemnity, it was said in Pintard v. Tackington, 10 Johns. 104, that the cases which have not permitted a recovery at law, upon negotiable paper which was merely lost, were *46 those in which the paper had been indorsed before it was lost. And where a plaintiff declared on a promissory note payable on demand, and stated that the note had been lost, and the existence and contents of the note were proved, and it not appearing that the note was negotiable, or if negotiable, that it had in fact been negotiated, it was held that he was entitled to recover on the note. See also Rowley v. Ball, 3 Cowen, 303; McNair v. Gilbert, 3 Wend. 344.
In Rogers v. Miller, 4 Scam. 333, the court say that where the note has not been indorsed at all, or has been specially indorsed, there, as no danger can arise of its falling into the hands of a bona fide holder, and thus fastening upon the maker a second liability, the party may recover by showing the loss of the note merely, and its contents.
In Depew v. Wheelan, 6 Blackf. 485, it was held that the payee of a lost promissory note, transferable by indorsement under the statute, not having indorsed it, may maintain an action at law on it against the maker. Dewey, J., in delivering the opinion of the court, observes: “ The note is averred in the declaration to be lost, but there is no averment, or proof, that it was ever indorsed by the plaintiffs. There was testimony that if it be lost, it was lost from the possession of the agent of the plaintiffs. This, we think, raises a fair presumption that they never transferred it; and of course no other holder can show title to it. The makers are in no danger of a second liability.”
In Lazell v. Lazell, 12 Vt. 443, the court pronounces the law as well settled that when a note not negotiable, or if negotiable by being payable to order, not negotiated, is lost, an action at law may be maintained on the note, on proof of its loss, to recover its contents.
Aborn v. Bosworth, 1 R. I. 401, was the case of a lost bill of exchange drawn upon II. and payable to A., the plaintiff, or order, on presentment. In its transmission to the agent of the plaintiff, the bill was lost on board a steamer. In an action against the drawer of the bill, in which there was a verdict for the plaintiff, Green, C. J., charged the jury: “If you find that the bill was not destroyed, you will then deter *47 mine -whether the bill was unindorsed, or so indorsed that no third party could recover upon it. If the bill had no indorsement, or if it was specially indorsed to the party to whom it was sent, then no third person can interpose a claim.”
In Moore v. Fall, 42 Maine, 450, the case of Pintard v. Tackington, supra, is approvingly cited in support of the doctrine, that a recovery may be had at law without furnishing an indemnity on a lost note which is not negotiable, or which, being negotiable, has not been negotiated.
By statutory provision in Alabama, an action is maintainable at law on a lost negotiable note, which had not been negotiated at the time of the loss. . But in Branch Bank at Mobile v. Tillman, 12 Ala. 214, the remedy by statute was declared to be cumulative, and not designed to repeal or annul all others which were previously recognized at law. The preamble of the enactment indicates its true meaning to provide a certain remedy at law for parties who might lose the written evidence of any debt or duty, — the necessity for which is affirmed to be the uncertainty in the decisions of the courts of the state upon the subject.
It is manifest that the principle underlying the authorities to which we have heretofore referred is, that the payee or owner in an action at law against the maker on a lost negotiable instrument, need not tender to him an indemnity, if the paper when lost was in such a state that the maker would not be compelled to pay the contents again to a bona fide holder. The rule which, we think, should govern in the case at bar, is in keeping with the decision in Rolt v. Watson, 4 Bing. 273,— a case overruled in England, but not in America, and which, in our judgment, commends itself as an authoritative exposition of the law on the subject-matter adjudicated. “The question for us,” says Best, C. J., “ is, whether the bill which the defendant in this cause has accepted, be an instrument which can ever rise in judgment against him? Now the jury have found expressly that the bill was unindorsed, and though payable three months after date, it has not been heard of from 1825 to 1827. There is no decision in which the party has been held to be responsible in respect of an outstanding bill *48 unindorsed. In all the cases in which a defendant has been holden to be discharged, in respect of a supposed liability on a bill, the bill has been in such a state as to be likely to be used against him.” See Long v. Bailie, 2 Campb. 214 n.
It is contended that the words, “ payable on return of this certificate,” gave the bank the right to hold the depositor to the letter of the contract, and to refuse payment until the certificate was surrendered, or until a sufficient indemnity had been offered. "We do not understand that those words import a stipulation for an indemnity in case of a failure to return the certificate, or to settle the terms upon which the payee would be entitled to his’money, in the event of a loss of the instrument. Under some circumstances, an indemnity might be properly required for the maker’s protection, as, where the instrument is payable to bearer, or to order, and indorsed at the time of its loss, while under other circumstances, such an indemnity might be wholly unnecessary. The words, “ payable on return of this certificate,” cannot be construed to have an effect beyond what might be sufficient for the safety of the bank, upon its paying the certificate. At the most, the bank should not demand indemnity, when not necessary to protect itself against a second liability. A note payable to bearer requires a physical presentation of the instrument before payment, as much as a certificate of deposit “payable on its return.” By the literal terms of the note, there must be a bearer of it before payment can be exacted. And yet in the light of Thayer v. King, supra, it will not be claimed, that a note payable to bearer and lost after it becomes due, cannot be collected without first producing the note or tendering an indemnity. In every promissory note there is an implied undertaking by the payee, or holder to return it to the maker on payment of the money; and an express undertaking to return it could have no greater force, nor change or modify the legal effect of the instrument. As expressed by Peck, J., in Smilie v. Stevens, supra, “ The return of the certificate is an act to be done with the instrument itself, contemporaneous with the payment, and is no more than would be the implied duty of the holder of a negotiable note or bill, in the absence *49 of such, stipulation; as it is the duty of the holder to deliver up a negotiable promissory note, or bill, on the payment of it by the maker, as a voucher for his security, or show a sufficient excuse for not doing so.” An inability to return the certificate, by reason of its loss, cannot operate as a payment or satisfaction. The maker is not thereby discharged; but the question arises as to what, if any, conditions should be imposed upon the loser, before he can recover of the maker. Having failed to return the certificate, though required to tender an indemnity in cases where the maker would not be safe in paying without such return, he should not be required to go further, and indemnify when the certificate was not negotiated at the time of its loss, and its non-delivery to the maker would not subject him to a second payment.
It is assigned as error that the court below allowed interest on the certificate of deposit from the 18th day of September, 1882. On that day Brown requested payment, and the bank refused. It was incumbent upon him to produce and surrender the certificate, or give an adequate reason for his inability to do so. Such a reason was furnished in the loss of the certificate. As the bank, notwithstanding, deemed it advisable to withhold payment, the certificate should bear interest from the day the bank declined to pay.

Judgment affirmed.