Myers *v.* The City of Jeffersonville *et al.*

MYERS *v.* THE CITY OF JEFFERSONVILLE ET AL.

[No. 17,989.    Filed June 18, 1896.]

MUNICIPAL CORPORATIONS.—*Refunding Bonds.—Statute Construed.* —Under act of March 3, 1877, authorizing the funding of city indebtedness, funding bonds which have passed into the hands of innocent and good-faith purchasers, are not subject to defense by the city, and, as a *bona fide* indebtedness, are subject to be refunded.

SAME. — *Constitutional Amendment.—Municipal Indebtedness.*—The constitutional amendment of March 14, 1881 (section 220, Burns' R. S, 1894), limiting the amount of indebtedness to be incurred by municipalities to two per cent. of the taxable property, does not render invalid prior indebtedness exceeding that limit, nor deny the right of a city so indebted to refund such debt by the issue of new bonds.

SAME.—*Courthouse.—County Seat Removal.—Injunction.*— Money borrowed by a city to defray the expense of litigation, involving the removal of a county seat, and the cost of a lot and the building of a courthouse and jail for a county, is unauthorized ; and bonds issued to secure the money so borrowed have not such validity in the hands of any holder as to preclude a citizen and taxpayer from the right of injunction to prevent the refunding of such bonds.

From the Clarke Circuit Court. *Reversed.*

*M. Z. Stannard,* for appellant.

*L. A. Douglass,* for appellees.

HACKNEY, J.—The appellant sought to enjoin the city of Jeffersonville and the officers thereof from executing certain bonds of said city. The questions presented by the record arise upon a special finding and conclusions of law rendered by the trial court.

By the facts specially found, it appears that the appellees were attempting to refund the indebtedness of the city at a lower rate of interest than that provided in the bonds of said city, already outstanding and representing said indebtedness. The facts found, further disclose that while said indebtedness exceeds the limit of "two per centum of the value of the taxable property within such corporation," as such limit is prescribed by the amendment to the State constitution, adopted March 14, 1881, R. S. 1894, section 220, all of said indebtedness was created prior to March 14, 1881.

The refunding bonds were authorized by ordinances, and were divided into three distinct series, the last of which consisted of $87,000.00, and were to take the place of bonds found to have been issued as representing an indebtedness of said city, in a like sum, "the larger part of which * * was incurred in purchasing the necessary ground therefor and building a courthouse and jail for the county of Clarke, and in paying the cost and expense of conducting a county seat contest, brought to change the location of the county seat from the town of Charleston, in said county of Clarke, to the city of Jeffersonville, in said county."

The court found, as conclusions of law, that said several series of bonds were valid, and refused to enjoin the appellees from negotiating them.

It is here objected that none of the indebtedness proposed to be refunded was found to have been valid, and that it affirmatively appears, from the facts found, that said $87,000.00 indebtedness was not valid because of the absence of authority in the city to create the same for the purposes found.

As to the indebtedness, other than the $87,000.00, it appears to have been incurred for the erection of a schoolhouse, for defraying the running expenses of the city, and the cost of repairs of streets and alleys, and other public improvements of said city. We are not advised as to any valid objection to this class of indebtedness. All of it was refunded, as found by the court, after the act of March 3, 1877 (Acts 1877, p. 17), authorizing the funding of any indebtedness of such city, and providing that after the funding "bonds shall have been negotiated, no action or proceeding shall be instituted, nor any defense to any action interposed, by said city, or by any person or persons, the object of which shall be to impair the validity or security or depress the value of said bonds."

The bonds issued, therefore, in funding that part of the city's indebtedness, having passed into the hands of innocent and good-faith purchasers, as the court found, would not be subject to defense by the city and must stand, under the provisions of said act, as a *bona fide* indebtedness and subject to be refunded.

In 2 Beach. on Pub. Corp., section 929, it is said: "The municipality, by the issue of new bonds, waives any defenses it may have to the old bonds. By the new issue it obtains an advantage in postponing the time of payment, and generally in the rate of interest; and after the holders of the original issue have surrendered their evidence, the town will not be permitted to set up old irregularities as defenses which the creditor

had the right to assume were waived when it made him the new offer. The municipality must do equity. So careful have the courts been to protect the interest of holders of renewal bonds, that where an old issue had been held invalid and the municipality could not ordinarily issue new bonds in renewal, yet where it was specially authorized to issue new bonds in payment of its indebtedness, the holders of the original bonds were deemed creditors and were entitled to new bonds." *Town of Solon* v. *Williamsburgh, etc., Bank,* 114 N. Y. 122; *Hills* v. *Peekskill, etc., Bank,* 101 N. Y. 490.

This doctrine is unnecessary to the authority to issue renewal bonds, but it supports the presumption we have indulged in favor of the validity of the indebtedness upon which the original bonds issued. Besides, the burden of the issue as to the validity of such indebtedness, rested upon the appellant, and, as well said by counsel for the appellants, "Where a special finding is silent upon the issue or any question of fact, such issue or fact is regarded as found against the party having the burden of the issue."

That the entire indebtedness, or any part thereof, was invalid for the one reason that it exceeded the two per cent. limit, as prescribed by the constitution after the indebtedness was incurred, cannot be maintained. *Powell* v. *City of Madison,* 107 Ind. 106; *Scott* v. *City of Davenport,* 34 Ia. 208.

The constitutional amendment was designed to operate prospectively, and would, therefore, not render invalid a prior indebtedness, nor deny the right of a city so indebted to refund such debt by the issue of new bonds after the adoption of such amendment.

As to the outstanding $87,000.00 of bonds, counsel for the appellees cite us to no express authority from the legislature, for the issue of bonds for the purpose

of defraying the expense of litigation incident to the removal of a county seat, and the cost of a lot and a courthouse and jail for a county, made necessary by such removal. Nor have we been able to find any such express authority. Counsel for appellees suggest the well recognized rule that incidental or implied power exists for the purpose of carrying into operation such powers as are expressly given. It is not shown, or attempted to be shown, however, out of what express power the incidental power arises to authorize the incurrence of the debt, evidenced by the last mentioned bonds. We know of no express power given to cities, the execution of which would render necessary the borrowing of money for the purpose there found. There is a recital, in the ordinance looking to the refunding of said bonds, that "the proceeds thereof were used for the purpose of paying off notes and obligations of said city, which indebtedness was incurred by the expenditure for public improvements in said city." The ordinance containing this recital is found, at full length, in the special finding, and neither said ordinance nor said recital can be considered as a finding of fact with reference to the expenditure of said moneys, or the purpose for which they were borrowed. The ordinance is evidentiary, and it constitutes no finding of fact. The recital therein is neither the finding of a fact nor evidence of the facts. Furthermore, the express finding of facts by the court is contrary to the recital, unless it may be said that the "public improvements in said city," were in the erection of a courthouse and jail and the purchase of a lot therefor for Clarke county. Construing the finding, therefore, as establishing the fact that the $87,000.00, for which said bonds were issued, were borrowed and expended for and in the removal of said county seat, the purchase of a lot for and the erection thereon of a court-

house and jail for the county of Clarke, we conclude that such indebtedness was not valid.

It is argued, by the learned counsel for the appellee, that the bonds of a city, "regularly issued and delivered in the hands of a *bona fide* holder, for a valuable consideration, without notice, must be regarded as public securities, and placed on the same footing as bills of exchange," citing *City of Aurora* v. *West*, 22 Ind. 88 (85 Am. Dec. 413); *City of Mount Vernon* v. *Hovey*, 52 Ind. 563; *City of Madison* v. *Smith*, 83 Ind. 502; *Wilkinson* v. *City of Peru*, 61 Ind. 1; *City of Bloomington* v. *Smith*, 123 Ind. 41 (18 Am. St. Rep. 310).

The only further defense made of said bonds is, that "Any citizen and taxpayer may enjoin the illegal issue of bonds; but he cannot enjoin their payment after they are issued, unless the city could successfully maintain a defense on the same ground upon which the injunction is applied for as against the then holder," citing *City of Madison* v. *Smith*, *supra*; *Wilkinson* v. *City of Peru*, *supra*, and *City of Mount Vernon* v. *Hovey*, *supra*. It is then said that "These bonds are now in the hands of *bona fide* holders for valuable consideration, and negotiated to them without notice, and under such circumstances, appellant cannot, and does not, occupy the situation of a taxpayer who is attempting to enjoin an illegal issue of bonds before they are negotiated."

Accepting the propositions, and the force of the authorities as stated, they do not meet the question of an illegal or unauthorized issue of bonds. Here the question is as to the right of a taxpayer to object to the refunding of an indebtedness created without any authority of law, and it remains to inquire as to whether, under the circumstances found by the court, the holders of the bonds may be regarded as holders without notice of the absence of any authority to execute them;

and whether the city might not defend against the bonds for the very reason that the appellant seeks to enjoin the refunding thereof.

Not a single authority has fallen under our observation to the effect that the city is estopped by the issue of illegal and unauthorized bonds, or that one may become such *bona fide* holder of bonds of that character that the city or a taxpayer may not deny their validity.

In Beach. on Pub. Corp., Vol. 2, section 936, it is said: "An entire want of power to issue the bonds renders them invalid even in the hands of a *bona fide* holder. Every man is chargeable with notice of that which the law requires him to know, and of that which, after being put upon inquiry, he might have ascertained by the exercise of reasonable diligence," citing *St. Joseph Township* v. *Rogers,* 16 Wall. 644; *Merchants' Bank* v. *Bergen County,* 115 U. S. 384; 15 Am. and Eng. Ency. of Law, 1291; *Township of Washington* v. *Coler,* 2 U. S. Cir. Ct. App. 272, 51 Fed. Rep. 362.

In the Am. and Eng. Ency. of Law cited, it is said: "Want of power to issue the securities is the only defense which can be set up against a *bona fide* holder for value before maturity, without notice either actual or constructive. 'Bonds payable to bearer, issued by a municipal corporation  *  *  if issued in pursuance of a power conferred by the legislature, are valid commercial instruments, but if issued by such a corporation which possesses no power from the legislature, they are invalid, even in the hands of innocent holders,'" citing *St. Joseph Township* v. *Rogers, supra; Black* v. *Cohen,* 52 Ga. 621; *Oubre* v. *Donaldsville,* 33 La. Ann. 386; *State* v. *Montgomery,* 74 Ala. 226; *City of Mount Vernon* v. *Hovey, supra. The Board, etc.,* v. *Brown,* 28 Ind. 161, is cited also, but as opposed to the text above quoted. On the contrary, we think that

case supports the text. It holds that an order for the expenditure of money, made by a county board, without authority of law, is void, and that bonds of the county in the hands of *bona fide* holders are subject to any defense available against the parties to whom they were issued.

It is further said, in the Am. and Eng. Ency. of Law, *supra*, that "There can be no estoppel in favor of *bona fide* holders where there is an entire absence of power," citing many authorities.

In *Hayes* v. *Holly Springs*, 114 U. S. 120, it was said: "Even a *bona fide* holder of a municipal bond is bound to show legislative authority in the issuing body to create the bond. Recitals on the face of the bond or acts *in pais*, operating by way of estoppel, may cure irregularities in the execution of a statutory power, but they cannot create it. If, as in the present case, legislative authority was wanting, the bond has no validity." To the same effect are *Williamson* v. *City of Keokuk*, 44 Ia. 88; *Bissell* v. *City of Kankakee*, 64 Ill. 249 (16 Am. Rep. 554); *Livingston County* v. *Weider*, 64 Ill. 427; *Town of Big Grove* v. *Wells*, 65 Ill. 263; Reed on Corp. Finance, Vol. 2, section 409; *Young* v. *Board, etc.*, 55 N. W. Rep. 1112. See also *City of Lafayette* v. *Cox*, 5 Ind. 38; *Harney* v. *Indianapolis, etc., R. R. Co.*, 32 Ind. 244; Dillon's Municipal Corp. (4th ed.), sections 163, 164, 518, 542, 545, 546.

The result of the authorities is, we think, that where municipal bonds have passed into the hands of *bona fide* holders, that is: holders for value without notice of mere irregularities in the exercise of existing power to execute the bonds, they hold them as other commercial paper, and subject to no defense by reason of such irregularities. But where there is an absence of power to execute the bonds they are void and subject to defense in the hands of whomsoever they may come.

It may be well to say that we pass upon the question before us without attempting to anticipate the claims of those who may hold the bonds in question, and with no purpose to establish a rule applicable to other facts than those here presented, and as we construe them.

Money borrowed by a city to defray the expense of litigation involving the removal of a county seat and the cost of a lot and the building of a courthouse and a jail for a county, we hold to be unauthorized, and bonds issued to secure the money so borrowed have not such validity in the hands of any holder as to preclude a citizen and taxpayer from the right of injunction to prevent the refunding of such bonds.

The judgment of the circuit court is reversed, with instructions to restate its conclusions of law in accordance with this opinion.